THORNAL, Justice.
We have for review by appeal, a decree of a chancellor validating an issue of revenue refunding bonds.
The appellee, Okaloosa County Gas District, hereafter called the “District”, sought *17 validation of refunding bonds in the amount of $5,775,000.00. By the proposed issue it is contemplated that three outstanding bond issues totaling $5,679,000.00 will be refunded. The proposed bonds are to be liquidated out of the revenues from the operation of a natural gas transmission and distribution system. There is no pledge of ad valorem taxes. The chancellor entered a decree validating the bonds. For reasons which we shall discuss, the appellant seeks reversal of this decree.
The Okaloosa County Gas District was created by Chapter 29334, Laws of Florida, 1953. The act created a district and defined its territorial limits as those of Okaloosa County. The District was authorized to operate a gas transmission and distribution system throughout the county; to operate a gas manufacturing plant; to establish and maintain transmission lines to serve municipal gas systems and, generally, to engage in the business of distribution and transmission of natural gas to consumers. The 1953 Act was amended by Chapter 31051, Laws of Florida, 1955. The 1955 statute expanded the area to be served by the District to include a substantial section of Santa Rosa County. On August 14, 1963, the Board of Directors of the District, by resolution, authorized the issuance of the subject bonds to be known as “Natural Gas Revenue Refunding Bonds, Series 1963.” The announced purpose of the 1963 issue is to refund certain outstanding Natural Gas Revenue Refunding Bonds, Series A, and Series B, and also certain Natural Gas Revenue Improvement Bonds, Series B. The benefits to the District contemplated by the 1963 issue are discussed in our disposition of the attack on the feasibility of the proposal.
The 1963 Florida Legislature enacted Chapter 63-1689 and Chapter 63-1697. The 1963 statutes were local acts which purported to establish certain procedures to be followed by the District in handling its fiscal affairs. If the 1963 Acts are valid, the proposed bond issue cannot be approved because certain requirements announced by the acts were not met. In the validation proceeding the District assaulted the validity of the 1963 Acts in order to eliminate this impediment to the validation. The chancellor found the acts to be unconstitutional and, therefore, not a barrier to his validating decree.
It will be recalled that the District operates its gas transmission and distribution system in Okaloosa County and in a. substantial area of adjoining Santa Rosa. County. The 1963 statutes were local bills, applicable to the District. Prior to introduction of the acts in the Legislature, there was no publication in Santa Rosa County of notices of intent to introduce the acts. The proponents of the acts published in Okaloosa County the constitutional notice of intent to apply for the passage of the same. The result was that the proposals, were passed by the Legislature after publication of notice of intent in Okaloosa. County but no publication of notice in Santa Rosa County. Article III, Section 21,. Florida Constitution, F.S.A., in part provides :
“ * * * no local or special bill shall be passed * * * unless notice of intention to apply therefor shall have been published in the manner provided by law where the matter or thing to be affected may be situated * *
The constitutional provision is implemented by Section 11.02, Florida Statutes,. F.S.A.
 We have held that where a local bill purports to govern or regulate the conduct of an activity in more than one county, the notice of intent must be published in each of the counties where the subject matter of the legislation is situated. State et al., v. Pinellas-Manatee Joint Bridge Authority et al, 146 Fla. 292, 200 So. 689. Admittedly, the District operates in both Okaloosa and Santa Rosa Counties. The 1963 proposed legislation purported to regulate the activities of the District in a *18 fashion which would affect its operations in both .counties. Notice of intention to introduce the legislation should have been published in both counties. The failure to do this was fatal to the validity of the legislation under Article III, Section 21, supra. The chancellor correctly held that the statutes were ineffective to prevent the validation of the bonds.
The 1963 bond resolution contains a provision which calls the outstanding bonds for redemption on October 1, 1966. The resolution requires that the proceeds of the sale of the 1963 refunding issue be deposited in a special trust account to pay the principal and interest on the outstanding bonds when they are surrendered for redemption on October 1, 1966, pursuant to the call. These funds may be invested in U. S. government interest bearing securities. The appellant assaults this arrangement with the contention that it results in the payment of double interest until the outstanding bonds are actually surrendered. Pie also claims that inasmuch as the outstanding bonds provided for distribution of the revenues into certain specific funding accounts, the new arrangement would change this flow of funds contrary to original requirements. We ruled against this same contention in State v. City of Orlando, Fla., 82 So.2d 874. We there held that a trust account for the ultimate liquidation of outstanding bonds could be established if the bonds which are being called can be purchased and cancelled with reasonable promptness. We there held that a three-year period was not unreasonable. We do not overlook the fact that in the Orlando case there was a combination of refunding bonds with a proposed new issue to finance additional improvements. In the instant case the bonds are being refunded to accomplish lower rates of interest and to establish an open end pari passu provision which will make possible future improvements within the terms of the present resolution without the necessity of another new financing program.
The appellant next contends that the fiscal program reflected by the proposed issue is not feasible. We have disposed of this contention contrary to the position of the appellant in Chase v. Sanford, Fla., 54 So.2d 370; State v. Florida State Turnpike Authority, Fla., 89 So.2d 653; Sanibel-Captiva Taxpayers Association v. County of Lee, Fla., 139 So.2d 334, and Town of Medley v. State, Fla., 162 So.2d 257, Opinion filed March 23, 1964. In addition, the record supports the conclusion that the new issue will result in a substantial reduction in interest rates and that the 1963 bonds are subject to much more attractive call provisions. Further, there is a net overall saving to the District and the new issue will carry much less restrictive requirements for future pari passu bonds to finance improvements and capital extensions.
Finally, the appellant contends that the chancellor committed error in dismissing the Board of County Commissioners as an intervenor. We find no reversible error in this contention. So far as the record reveals, the county as a governmental unit had no official standing to dispute the validation. This, of course, would not preclude the county commissioners, as individuals, from appearing in the proceeding and contesting the issue. Apparently, at least one of them did so. There is no reversible error on this score.
The appellant has failed to demonstrate reversible error, so the decree must be affirmed.
It is so ordered.
DREW, C. J., and THOMAS, ROBERTS, O’CONNELL and CALDWELL, JJ., and FITZPATRICK, Circuit Judge, concur.