78 So.2d 718 (1955)
Ernest J. PIRMAN et al., Appellants,
v.
FLORIDA STATE IMPROVEMENT COMMISSION, and State Road Department of Florida, Appellees.
Supreme Court of Florida. En Banc.
February 16, 1955.
Rehearing Denied March 4, 1955.
*719 Mabry, Reaves, Carlton, Fields & Ward, Tampa, for appellants.
J. Turner Butler, Jacksonville, Ford L. Thompson, Tallahassee, and Dewey A. Dye, Bradenton, for Florida State Improvement Commission.
Ross H. Stanton, Jr., Tallahassee, for State Road Department of Florida.
MATHEWS, Chief Justice.
This is another example of taxpayers and property owners attempting to substitute their judgment or have the Court substitute its judgment for that of the constituted authorities vested with the power to designate the location of a road.
The selection of locations for public improvements has caused more delay in constructing such public improvements than any other cause. This is especially true with reference to roads and bridges. It is impossible to select a site or location for a major road or bridge which will satisfy the desires of all the citizens and taxpayers. The discretion to make such selections is generally vested in administrative boards, or the location itself is fixed by the Legislature. There is no constitutional provision which requires that the location of a road or bridge should be fixed by the Legislature or by the administrative board with such certainty that it can be located by a surveyor as a prerequisite to the issuance of bonds or the validation of such bonds.
The appellants in this case own some property which would be benefited materially if the constituted authorities would construct a road around Palma Sola Bay instead of across or over the Bay. The real question in which appellants are interested is stated in their brief where they state: "Indeed, plaintiffs would be glad to see the proposed new highway connecting Anna Maria Island with Bradenton constructed if it ran around Palma Sola Bay on the north rather than through it, and if, instead of widening Manatee Avenue, one-way streets were used."
Chapter 22700, General Laws of Florida, 1945, names, designates and establishes a state road, forming a part of the system of state roads of the State of Florida, a road in Manatee County described as follows:
"Commencing at or near the NW corner of the SW 1/4 of Section 30, Township 34 South, Range 17 East, the said point being at the westerly end of Manatee Avenue (Present State Road No. 18) near the westerly (sic) shore *720 of Palma Sola Bay; thence running in a generally westerly direction for a distance of 3.9 miles more or less to a junction with Anna Maria Road (Present State Road No. 18-A) on Anna Maria Key, latter said point of junction being at or near the SE corner of the SW 1/4 of the SW 1/4 of the SW 1/4 of Fractional Section 28, Township 34 South, Range 16 East."
After much discussion and agitation, sentiment crystallized for the construction of what is now called the Manatee County Bridge Project. The bridge in question over Palma Sola Bay is only a portion of the project and this particular bridge and its approaches is the part of the project now under attack.
The description of the Palma Sola Bridge contained in the resolutions authorizing the lease-purchase agreement of the State Improvement Commission and the State Road Department of the State of Florida at the request of the Board of County Commissioners of Manatee County is as follows:
"a) Palma Sola Bridge, described as a two-lane bridge with movable span over Sarasota Pass (Intracoastal Waterway), and causeways, bridge and road approaches from State Road 684 (G1A) on Anna Maria Island to a westerly extension of Manatee Avenue on the mainland east of Palma Sola Bay, together with necessary roadway connections between Palma Sola Bay and downtown Bradenton."
This description is a more definite description than that contained in Chapter 22700, General Laws of Florida 1945, and is contained within the general description set forth in said Act.
The appellants contend that the description set forth in Chapter 22700, General Laws of Florida 1945, and in the resolutions above mentioned, was so indefinite that the actual location could not be determined by a surveyor and, therefore, said Act and the resolutions above mentioned were null and void and that the determination of administrative authorities to build a bridge and make the connecting approaches in question was capricious and arbitrary. There is no merit to these contentions.
A bridge and its approaches are parts of a road. Section 341.09, F.S., F.S.A., is simply declaratory of what has always been considered to be a road or a part of a road. That section reads as follows:
"The terms `road' and `roads' as used in this chapter shall be construed to mean and include all highways and ways for public travel, including means for crossing streams by ways of bridges or ferries, under the jurisdiction of the several boards of county commissioners, or boards of bond trustees of the several counties or subdivisions thereof, of this state, or upon which such boards may expend any public money or cause work to be done, or any roads that may by this or any other law be placed under the supervision and control of the state road department."
Section 341.63(3), F.S., F.S.A., vests power in the State Road Department to make any project, or part thereof, a state road, or a part thereof. Section 341.47, F.S., F.S.A., vests power and authority in the State Road Department to determine and fix lines and locations of roads. Section 341.81, F.S., F.S.A., provides that all routes that may be hereafter approved, designated, dedicated and constructed by the State Road Department are designated and declared to be parts of the State Highway System of Roads.
Chapter 22700, General Laws of Florida 1945, must be construed in connection with the above sections of the law and it is very clear that the Legislature has vested in administrative boards, created by it, the power and authority to take every action taken in establishing and designating the location of all parts of the project known as the "Manatee County Bridge Project", which includes the "Palma Sola Bridge", as described in the resolutions of the Improvement Commission, the State Road Department, the Board of County Commissioners, and the validation petition. Lewis v. Leon *721 County, 91 Fla. 118, 107 So. 146; Morrison v. Farnell, 126 Fla. 385, 171 So. 528; Orange County v. Fordham, 160 Fla. 259, 34 So.2d 438; State v. Florida State Improvement Commission, Fla., 75 So.2d 1, and Webb v. Hill, Fla., 75 So.2d 596.
The power of county commissioners to issue county bonds for the construction of county roads is provided for by Chapter 130, F.S., F.S.A., and may be compared with the power conferred upon the duly created administrative boards involved in this case. There is no requirement in the statutes or the Constitution that the location of such roads should be fixed and established prior to the validation or issuance of bonds. So as far as the Constitution and the statutes are concerned, the resolution may provide for county roads generally and after the validation and issuance of the bonds, the county commissioners may then determine the location of the roads to be constructed.
The board of county commissioners may, however, describe the road or locate the road prior to the validation and issuance of the bonds and when that is done, the board will not be permitted to deviate from the location as established. In the case of Whitner v. Woodruff, 68 Fla. 465, 67 So. 110, prior to the bond election and issuance of the bonds, the County Commissioners designated a certain street in Sanford to be improved from the proceeds of a portion of the bonds. After the bonds had been issued, the County Commissioners decided to change the location of the improvement by changing to another street. A suit was brought to enjoin such change or deviation. The lower court approved the changed location but this Court reversed the lower court and held that such change or deviation could not be made after the bonds had been approved and issued.
In this case the bill of complaint showed that the bonds had been validated and further showed that a portion of the proceeds were to be used for a bridge, with movable span over Sarasota Pass, and causeways, bridge and road approaches from State Road 684 on Anna Maria Island to a westerly extension of Manatee Avenue on the mainland east of Palma Sola Bay, together with necessary roadway connections between Palma Sola Bay and downtown Bradenton. The bill of complaint specifically refers to the validating decree of said bonds in the case of State v. Florida State Improvement Commission, Fla., 72 So.2d 28. These bonds are now ready to be sold. The transcript of record in the above case has been made a part of the record in this case. The appellants in this case are bound by the final decree of validation relating to the description and location of the bridge over Palma Sola Bay, together with the necessary roadway connections and approaches as set forth in State v. Florida State Improvement Commission, supra.
The rule nisi in the bond validation proceeding required all persons to appear on the 19th day of January, 1954. The appellants contend they did not know that it was intended to build a causeway and bridge across Palma Sola Bay instead of around the Bay until July 26, 1954. Yet, the validation petition, which was a part of the validation proceeding was made a part of the record in this case by the appellants, contained the description of the "Palma Sola Bridge" here above set forth, and also the following:
"Provided, however, that said toll bridges (Palma Sola Bridge and Cortez Bridge) described in (a) and (b) above, and said Longboat-Anna Maria Bridge, described in (c) above, being essential to the production of tolls from said two toll bridges, shall be completed substantially in accordance with plans and specifications for said bridges filed with the Department prior to the issuance of bonds to finance the construction of said bridges."
The fact that the War Department of the United States may have granted a permit to take care of the needs of navigation different from the ideas and desires of the appellants is of no consequence in this proceeding.
*722 All proceedings providing for the bridge and causeways across Palma Sola Bay appear to have been taken by the lawfully constituted boards authorized by law to take such proceedings. There is no fact alleged to show that the proceedings taken were arbitrary or capricious, and the appellants have no right to substitute their judgment for that of the lawfully created boards in question, and this Court has no authority to substitute its judgment and discretion for that of such boards. For this Court at this late date to authorize a change in location as now fixed and established for a bridge over Palma Sola Bay to a road around the north of the Bay would constitute a deviation and departure from the location as established and would make it necessary to undo everything which has been done and to start all over again. This Court has no such power.
It is next contended by the appellants that running the road through Palma Sola Bay and the construction of the causeways and bridge violates the property rights of the appellants owning riparian property on Palma Sola Bay north of the crossing.
The bill of complaint shows that the appellants do not own any of the property which must be acquired in building the bridge, approaches and causeways. It does show that they are riparian owners on the Bay north of the crossing but none of their property is taken. This Court settled this question contrary to contention of the appellants in the case of Duval Engineering & Contracting Co. v. Sales, Fla., 77 So.2d 431, written by Mr. Justice Terrell.
We have carefully considered each and every contention of the appellants and they are without merit. The Chancellor was correct in granting the motion to dismiss the bill of complaint as amended.
Affirmed.
THOMAS, ROBERTS and DREW, JJ., concur.
TERRELL, J., agrees to the judgment of affirmance.